IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISON

|  |  |
|---|---|
| ADVANCED TRANSACTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br><br>BELK, INC. and BELK eCOMMERCE, LLC,<br><br>Defendants. | Case No. 6:22-cv-00176<br><br>Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Advanced Transactions, LLC ("Advanced Transactions") files this Complaint against Defendants Belk, Inc. and Belk eCommerce, LLC, (individually and collectively referred to herein as "Belk") for patent infringement of United States Patent Nos. 7,065,555; 7,386,594; 7,693,950; 7,979,057; 8,150,736; 8,175,519; 9,747,608; and 10,783,529 (the "patents-in-suit"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

## THE PARTIES

2.      Advanced Transactions is a limited liability company organized under laws of the State of Georgia with its principal place of business situated at the Day Building, Suite 230, 4725 Peachtree Corners Circle, Peachtree Corners, GA 30092.

3.      On information and belief, Belk Inc. is a corporation organized and existing under the laws of Delaware, with a place of business at 2700 Loop 340, Waco, TX 76711-2408.  Upon information and belief, Belk, Inc. sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products and services that perform infringing processes into the stream of commerce knowing that they would be used, offered for sale, or sold in this judicial district and elsewhere in the United States.

4.      Upon information and belief, Belk eCommerce LLC is a corporation organized and existing under the laws of North Carolina, with a place of business at 2801 W Tyvola Road, Charlotte, NC 28217. Upon information and belief, Belk eCommerce LLC sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products and services that perform infringing processes into the stream of commerce knowing that they would be used, offered for sale, or sold in this judicial district and elsewhere in the United States. Upon information and belief, Defendant Belk eCommerce LLC is a wholly-owned subsidiary of Defendant Belk, Inc.

5.      On information and belief, Defendant Belk Inc. may be served with process through its registered agent, National Registered Agents, Inc. 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136 or anywhere they may be found.

6.      Defendant Belk Inc. has been authorized to do business in the State of Texas and the Western District of Texas since on or about March 12, 1998, under Texas SoS File Number 0012011606.

7.      On information and belief, Belk has made, used, offered to sell and/or sold products and services, including the following specifically accused products and services: (1) Belk Marketing Emails;[1] (2) Belk Pay;[2] (3) Belk Mobile Apps;[3] (4) Belk Gift Cards;[4] (5)Belk Rewards Card;[5] (6) the Belk website;[6] (7) Belk online shopping services;[7] (8) Belk in-store shopping services;[8] (9) Belk payment processing services; (10) current or legacy Belk products or services, which use, or have used, one or more of the foregoing products and services as a component product or component service; (11)

---

[1] *See* https://www.belk.com/customer-service/policies-guidelines/privacy-policy/

[2] *See* https://belk.syf.com/login/.

[3] *See* https://www.belk.com/customer-service/about-us/stay-connected/download-our-app/.

[4] *See* https://www.belk.com/gift-cards/.

[5] *See* https://www.belk.com/belk-credit-card-rewards-benefits.html.

[6] *See* https://www.belk.com.

[7] *See* https://www.belk.com/shopping-bag.

[8] *See* https://www.belk.com/stores/.

combinations of products and/or services comprising, in whole or in part, two or more

of the foregoing products and services; (12) and all other current or legacy products and

services imported, made, used, sold, or offered for sale by Belk that operate, or have

operated in a substantially similar manner as the above-listed products and services.

(As used herein, one or more of the forgoing products and services are individually and

collectively referred to as the accused "Belk Marketing Products and Services").

8.     On information and belief, Belk, as well as the hardware and software

components comprising the Belk Marketing Products and Services and/or that enable

the Belk Marketing Products and Services to operate, including but not limited to

servers, server software, webserver software, webserver hardware, email server

hardware, email server software, website client software, mobile computing device

client application software, networked communications hardware, network routers,

network switches, network hubs, WIFI access point hardware, WIFI access point

software, point-of-sale hardware, point-of-sale software, back-end hardware, back-end

software, cloud-based software, cloud-based hardware, and other hardware and

software computing systems and components (individually and collectively referred to

herein as the accused "Belk Marketing System"), infringes (literally and/or under the

doctrine of equivalents) at least one claim of each of the patents-in-suit.

## JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over Belk because it committed and

continues to commit acts of infringement in this judicial district in violation of 35 U.S.C.

§§ 271(a). In particular, on information and belief, Belk has made, used, offered to sell

access to, and/or sold access to the accused Belk Marketing Products and Services in

the Western District of Texas, and has made, used, offered to sell access to, and/or sold

access to the Belk Marketing System in the Western District of Texas.

10.     On information and belief, Belk is subject to the Court's jurisdiction

because it regularly conducts and solicits business, or otherwise engages in other

persistent courses of conduct in this judicial district, and/or derives substantial revenue

from the use, sale, and distribution of goods and services, including but not limited to

the accused Belk Marketing Products and Services provided to individuals and

businesses in the Western District of Texas.

11.     On information and belief, Belk infringes the patent-in-suit in the Western

District of Texas, at least, by making, using, offering to sell access to, and/or selling

access to the accused Belk Marketing Products and Services in the Western District of

Texas, and its making, use, offering to sell access to, and/or selling access to the Belk

Marketing System.

12.     On information and belief, Belk is the largest privately held department

store chain in the United States.  In all, there are 225 Belk stores in fourteen states,

including Texas.  *See* https://www.referenceforbusiness.com/history/Al-Be/Belk-Inc.html.

13.     Indeed, on information and belief, Belk maintains sixteen retail locations in the State of Texas. *See* https://www.belk.com/stores/.

14.     Belk also operates retail stores in this judicial district, including at 2700 West Loop 340, Waco, Texas, 76711-2408; 200 Sidney Baker South-Suite 1, Kerrville, TX 78028-5367; and 240 Creekside Way New Braunfels, TX 78130-6389.

15.     On information and belief, the accused Belk Marketing Products and Services and/or the Belk Marketing System are made, used, sold and offered for sale by Belk, or its agents, at Belk's retail stores, including those retail stores located in the Western District of Texas.

16.     On information and belief, Belk's customers located in the Western District of Texas have obtained access to and used the accused Belk Marketing Products and Services and/or the Belk Marketing System while located in the Western District of Texas.

17.     The Court has personal jurisdiction over Belk at least because it has continuous business contacts in the State of Texas and in the Western District of Texas; Belk has engaged in business activities including transacting business in the Western District of Texas and purposefully directing its business activities, including the sale or offer for sale of the Belk Marketing Products and Services to the Western District of Texas to aid, abet, or contribute to the infringement of third parties in the Western District of Texas.

18.     This Court has personal jurisdiction over Belk because, *inter alia*, Belk, on information and belief: (1) has committed acts of patent infringement in this Western District of Texas; (2) maintains a regular and established place of business in the Western District of Texas; (3) has substantial, continuous, and systematic contacts with this State and the Western District of Texas; (4) owns, manages, and operates facilities in this State and the Western District of Texas; (5) enjoys substantial income from its operations and sales in this State and the Western District of Texas; (6) employs Texas residents in this State and the Western District of Texas, and (7) solicits business using the Belk Marketing Products and Services and Belk Marketing System in this State and the Western District of Texas.

19.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b), at least because Belk, has committed acts of infringement in this judicial district, and has regular and established places of business in this judicial district.

## United States Patent No. 7,065,555

20.     On June 20, 2006, the USPTO duly and legally issued United States Patent No. 7,065,555 ("the '555 patent") entitled "System and Method Related to Generating and Tracking an Email Campaign" to inventors Michael G. Foulger, Thomas R. Chipperfield, Jeremy S. Cooper, and Andrew C. Storms.

21.     The '555 patent is presumed valid under 35 U.S.C. § 282.

22.     Advanced Transactions owns all rights, title, and interest in the '555 patent.

23.     Advanced Transactions has not granted Belk an approval, an authorization, or a license to the rights under the '555 patent.

24.     The '555 patent relates to, among other things, a method and system for generating and tracking an email campaign.

25.     The claimed invention(s) of the '555 patent sought to solve problems with, and improve upon, existing marketing and market research and analysis systems. For example, the '555 patent states:

> The ability to market a product or service to individuals who are accessible on the Internet is becoming increasingly important. Effective ways of contacting these individuals are being sought. For instance, to market to these individuals, email may be sent to the individuals over the Internet, to provide information related to the product or service. Email systems exist today for sending email to a target set of email addresses for purposes such as marketing, information acquisition, and otherwise. A system for sending email to a number of email targets for such purposes may be called an email campaign.

> Present email campaigns may suffer from difficulties in locating a pool of relevant individuals to be contacted. In a small email campaign, each email sent is critical to the success of the campaign, and needs to be carefully created. In other situations, large numbers of individuals to be contacted may have been found. This may result in increased difficulty in tailoring the large number of required email messages to the individuals for more effective contact.

> Furthermore, once an email campaign has been initiated, difficulties in measuring success of the email campaign are presented. Effective ways for determining whether email recipients have received email from the email campaign have been sought. Also, effective ways for allowing the email recipients to provide feedback have also been sought. It may be desirable for the email recipients to be able to respond with feedback, and for the quantity and content of the responses to be monitored and tracked.

*See* '555 Specification at col. 1, ll. 15-43.

26.     The '555 patent then states:

8

In light of the foregoing, what is needed is an efficient way to create and track a email campaign.

*See* '555 Specification at col. 1, ll. 44-45.

27.     The invention(s) claimed in the '555 patent solves various technological problems inherent in the then-existing existing marketing and market research and analysis systems to, among other things, function more efficiently.

### United States Patent No. 7,386,594

28.     On June 10, 2008, the USPTO duly and legally issued United States Patent No. 7,386,594 ("the '594 patent") entitled "System and method related to generating an email campaign" to inventors Michael G. Foulger, Thomas R. Chipperfield, Jeremy S. Cooper, and Andrew C. Storms.

29.     The '594 patent is presumed valid under 35 U.S.C. § 282.

30.     Advanced Transactions owns all rights, title, and interest in the '594 patent.

31.     Advanced Transactions has not granted Belk an approval, an authorization, or a license to the rights under the '594 patent.

32.     The '594 patent relates to, among other things, a method and system for generating an email campaign.

33.     The specification of the '594 patent is the same as the '555 patent specification, and solves the problems recited above and described in the '555 patent specification.

### United States Patent No. 7,693,950

34.     On April 6, 2010, the USPTO duly and legally issued United States Patent No. 7,693,950 ("the '950 patent") entitled "System and Method Related to Generating and Tracking an Email Campaign" to inventors Michael G. Foulger, Thomas R. Chipperfield, Jeremy S. Cooper, and Andrew C. Storms.

35.     The '950 patent is presumed valid under 35 U.S.C. § 282.

36.     Advanced Transactions owns all rights, title, and interest in the '950 patent.

37.     Advanced Transactions has not granted Belk an approval, an authorization, or a license to the rights under the '950 patent.

38.     The '950 patent relates to, among other things, a method and system for generating and tracking an email campaign.

39.     The specification of the '950 patent is the same as the '555 patent specification, and solves the problems recited above and described in the '555 patent specification.

### United States Patent No. 7,979,057

40.     On July 12, 2011, the USPTO duly and legally issued United States Patent No. 7,979,057 ("the '057 patent") entitled "Third-Party Provider Method and System" to inventors Luis M. Ortiz and Kermit D. Lopez.

41.     The '057 patent is presumed valid under 35 U.S.C. § 282.

42.     Advanced Transactions owns all rights, title, and interest in the '057 patent.

43.     Advanced Transactions has not granted Belk an approval, an authorization, or a license to the rights under the '057 patent.

44.     The '057 patent relates to, among other things, novel marketing and commercial transaction systems.

45.     The claimed invention(s) of the '057 patent sought to solve problems with, and improve upon, existing marketing and merchandizing systems. For example, the '057 patent states:

> The present invention is generally related to electronic hand held devices (hereinafter referred to as "hand held devices") and electronic commerce ("E-commerce"). The present invention is also related to hand held devices, such as a Personal Digital Assistant (PDA), wireless telephone, pager, or other mobile computing and storage device adapted for use in E-commerce. The present invention is also related to wireless and wireline computer networks. The present invention is additionally related to the fields of electronic cash, credit, award, incentive, and/or product management usable with/for retail establishments, organizations, and customers. The present invention is also related to merchandising systems and systems for generating and redeeming negotiable economic credits and/or data (e.g., electro[nic] product discount coupons and other negotiable economic credits, such as enterprise awards, cash, credit, etc.).

*See* '057 Specification at col. 1, ll. 18-33.

46.     The '057 patent then states:

> The recent shift in the consumer electronics industry from an emphasis on analog technology to a preference for digital technology is largely based on the fact that the former generally limits the user to a role of a passive recipient of information, while the latter is interactive and allows the user to control what, when, and how he or she receives and manipulates certain information.

> This shift in focus has resulted in the development and increasingly widespread use of, for example, a hand held digital device generically referred to as a "personal digital assistant" (PDA). These hand held devices are becoming increasingly popular for storing and maintaining information. Hand held devices, such as PDAs, may be connected to a desktop personal computer, networks or other PDAs via infrared, direct wire, or wireless communication links.

*See* '057 Specification at col. 1, ll. 35-49.

47.     The '057 patent then states:

PDAs are increasingly being utilized to access information from remote computer networks, such as the "World Wide Web" and the "Internet," both terms well known in the computer networking arts. PDA users can, for example, download e-mail from the Internet to the PDA. Web sites also exist that permit PDA users to access and download software that may be run on the PDA. For example, some web sites offer information to PDAs in the form of compressed news articles, stock quotes, and other data obtained from a wide variety of other electronic web-based sources.

Based on the foregoing, it can be appreciated that a large number of users of hand held devices, such as PDAs, pagers and mobile telephony are increasingly relying on such devices to maintain and transmit a variety of personal and business information.

*See* '057 Specification at col. 2, ll. 13-27.

48.     The '057 patent then states:

Discount coupons have long been distributed by manufacturers to merchandise their products and by retail stores or establishments to attract consumers to their particular stores. Discount coupons are a type of negotiable economic credit frequently utilized by enterprises for marketing products and services to the public. Enterprise awards, such as frequent flyer miles, are also negotiable economic credits relied upon by enterprises for marketing purposes.

Coupons are typically distributed to attract customers to engage in commercial transactions. Such coupons are effective if utilized by a sufficiently high percentage of customers. Utilizing this gauge, free-standing inserts are not very effective. Their redemption rate is presently approximately 2.8 percent and dropping.

Typically, coupons are physically collected at stores and credit is provided to the customer purchasing the corresponding product. The coupons are generally bundled and forwarded to a clearing house and then to a redemption center for sorting and counting. Reports are eventually forwarded to the manufacturers issuing the coupons in order to eventually generate a credit to the stores redeeming the coupons. It may unfortunately take several months before a store

is reimbursed for coupons under present coupon redemption/processing methods.

Another problem with coupons is a significant misredemption rate of between 20 and 30 percent as a result of misidentification and outright fraud. The misredemption problem is exacerbated by the enormous amount of time, usually a number of months, that it takes to reimburse the retail stores for the discount given the customer.

*See* '057 Specification at col. 2, ll. 28-57.

49.    The '057 patent then states:

Attempts have been made to address such problems. Such attempts, however, have resulted in additional problems, while not fully addressing the problems described above. For example, some companies have implemented a product specific micro-marketing system tied to a product point of selection and proprietary hardware in the form of an alerting platform attached to a grocery cart. A consumer within a retail establishment presses a button on the grocery cart alerting platform to select an electronic coupon when a coupon is graphically displayed at the exact product location within the retail establishment. The customer and the cart must be located at the point of selection to access the coupon. Such a micro-marketing system is proprietary in nature and requires a customer to retrieve a coupon only from the point of selection within the store. Thus, because of the proprietary nature of the system, the coupons, the alerting platform and other proprietary hardware cannot be utilized at other retail establishments. Further, the enterprise associated with the retail establishment is burdened by the maintenance, replacement, and repair of the proprietary hardware attached to the retail establishment's shopping carts due to use, abuse, the weather and so forth. Other systems known in the art utilize smart cards and card readers/writers at point of product selection for obtaining coupon data. Such systems, however, force the user to retrieve data at the point of product selection (*i.e.* point of selection), thereby tying their shopping activities to a proprietary system.

Accordingly, alternatives are needed to traditional mass marketing and couponing techniques, and proprietary, point of selection type systems. A need exists for non-, or solely-, proprietary, based systems that are flexible, efficient and consumer friendly. Further a need exists for credit devices that are not completely owned by the enterprise or retail establishment, but owned by the customers themselves and which can be utilized at other retail establishments and enterprises. Such a device and associated systems and methods, should be ubiquitous in nature to avoid the problems inherently associated with prior micro-marketing systems.

It has become apparent to the present inventors that the ability to acquire, store and use negotiable economic credits, such as coupons, on hand held devices would free users of the time consuming tasks of clipping, organizing and redeeming traditional paper coupons or credits (*e.g.*, frequent flier redemption via paper-based request), and the problems associated with proprietary micro-marketing systems. It has also become apparent to the present inventors that for merchandisers and manufacturers, such hand held devices could be utilized to effectively market, compile and negotiate credit exchanges/redemption much more efficiently than the traditional paper processing methods or proprietary-based micro-marketing systems and methods.

*See* '057 Specification at col. 2, l. 58 - col. 3, l 43.

50.     The '057 patent then states:

It is believed that aspects of the invention presently described herein solve the traditional problems associated with negotiable economic credits, including coupons, cash, credit and enterprise awards, and the problems associated with proprietary-based marketing systems thereof, while addressing an area of user control that has not yet been considered, anticipated, or utilized by coupon/credit merchandisers and manufacturers, namely, the increasing number of individuals who rely on hand held devices, such as PDAs, to maintain and store personal and business information.

*See* '057 Specification at col. 3, ll. 44–53.

51.     The invention(s) claimed in the '057 patent solves various technological problems inherent in the then-existing marketing and merchandizing systems to, among other things, (1) function more efficiently, (2) allow customers to become more actively engaged in retail marketing campaigns, (3) reduce the complexity, costs, and other problems associated with prior art marketing and merchandizing systems, (4) improve the security inherent in prior art marketing and merchandizing systems, and (5) improve accessibility and adoption of marketing and merchandizing systems over prior art marketing and merchandizing systems.

14

**United States Patent No. 8,150,736**

52.     On April 3, 2012, the USPTO duly and legally issued United States Patent No. 8,150,736 ("the '736 patent") entitled "Global Electronic Commerce System" to inventors Michel Horn and Thomas Scott Manaugh.

53.     The '736 patent is presumed valid under 35 U.S.C. § 282.

54.     Advanced Transactions owns all rights, title, and interest in the '736 patent.

55.     Advanced Transactions has not granted Belk an approval, an authorization, or a license to the rights under the '736 patent.

56.     The '736 patent relates to, among other things, a novel electronic shopping system.

57.     The claimed invention(s) of the '736 patent sought to solve problems with, and improve upon, existing electronic shopping systems. For example, the '736 patent states:

> The field of this invention is global sale of products and services using electronic means of (a) communications, (b) data storage and retrieval, (c) taking of orders, (d) fulfillment, (e) transfers of payments, and (f) providing customer service after the sale. Both business-to-business and business-to-consumer sales are effectuated.

*See* '736 Specification at col. 1, ll. 21-26.

58.     The '736 patent then states:

> The present invention is a system for use by even small manufacturers to meet a long-felt need to sell their products to Buyers around the world. The term "manufacturers" is meant to include manufacturers or authorized distributors for manufacturers; and the term "Buyers" is meant to include both individuals and organizations, including other manufacturers.

A complete system, termed a Global Store, is disclosed, a system that overcomes barriers to global trade of language, culture, and nationality. The Global Store integrates communications and database software technologies, hardware infrastructure, and operating methods to market and sell products from manufacturers around the globe to Buyers in a multitude of locales around the globe. Stated another way, The Global Store assembles and operates various subsystems to provide the infrastructure for manufacturers to use a new channel of global commerce, a Virtual Channel.

See '736 Specification at col. 1, ll. 27-43.

59.     The '736 patent then states:

A confluence of recognized needs and new technologies now sets the stage for a revolutionary change in how manufacturers bring their products to markets around the world.

Advances in communications and information technology and their associated standards have made geography a much less salient factor in trade than in prior years. Electronic communications at the speed of light enables one to purchase a product on the other side of the world as quickly as across the street—even more quickly should one decide to walk across that street to make the purchase. Furthermore, increasing use of English as a *de facto* language of commerce and increasing access to good, real-time translation technology will inevitably lower language barriers.

The Global Store system, described here, is a method that integrates revolutionary and evolutionary developments into a new system of global trade in the Virtual Channel. Only in the very recent past have the following compelling trends and powerful developments conjoined to permit the construction and operation of a complete and integrated system of global trade to meet long-felt needs:

1)  a quickly growing population of Internet users around the world who are ready to shop online 24 hours per day and 365 days per year,

2)  Websites to provide specialized functions such as online payments, online currency conversion tables, universal tax tables, and parcel tracking,

3)  third-party fulfillment services to support regional and global distribution,

4)  "pull" online marketing that allows customers greater opportunities to customize the products they purchase, as compared with the "push"

marketing of ready-made products that is characteristic of brick-and-mortar retail channels,

5) international agreements to eliminate tariffs on imports,

6) globalization of sources of supply,

7) efficiencies and economies of scale resulting from consolidation of marketing functions across markets,

8) establishment of ubiquitous delivery services,

9) availability of escrow services to assuage concerns of online Buyers about completing purchases after shopping baskets are filled,

10) growth in telecommuting to work and in home-based internet businesses, allowing participants to avoid driving and, thereby, less occasion to stop at brick-and-mortar stores to shop,

11) increased global travel and increased access to information from around the world using wide-band communications, thereby increasing interest in products from far-away locales,

12) consolidation of warehousing and distribution centers for quicker and more efficient fulfillment of orders,

13) manufacturers' need to retain brand control by offering increasing levels of customer support from a single point,

14) technology to implement Web-based multi-language global marketing systems using newly invoked international standards, locale-specific stored SQL procedures, integrated multi-locale Web-based relational data bases, and Unicode, and

15) integration of manufacturers' Business-to-Consumer sales with their Business-to-Business strategies for procuring supplies, offering a means to couple direct online customer sales with procurements, thus completing the transition to a completely integrated "Pull" model: A custom product is created to satisfy a Buyer's needs, and suppliers are enabled to provide necessary Business-to-Business products and services on a timely basis.

*See* '736 Specification at col. 2, l. 16 - col. 3, l. 17.

17

60.     The '736 patent then states:

Pent-up pressures for globalization have produced numerous examples of conventional e-commerce businesses attempting to expand globally. These businesses generally meet the challenge to provide information in multiple languages and across cultures by cloning Websites from one locale to another—reproducing some of the design of the original Website and some of the content. This multi-headed e-commerce approach is a crude interim step that fails to meet the emerging needs of manufacturers who desire global sales. Loss of the efficiencies and economies of a truly global approach make the prices of their products less competitive than should be possible, and there is the additional problem of entering and maintaining current and accurate information across multiple databases.

In conventional e-commerce it is not uncommon for the unscrupulous to sell brand name goods through Websites when they are not authorized to do so. In response, manufacturers desire to maintain better control of prices, marketing information about their products, sales, fulfillment, and customer service—all in a global context and, ideally, from a single integrated site.

Buyers are reluctant to make international purchases when they fear that they will have no practical recourse if they pay for a product but either do not receive it or find the product is not acceptable. What is needed for a hesitant Buyer is an escrow service that will complete settlement only after the product has been successfully delivered and the Buyer is satisfied.

Many conventional e-commerce Websites have sought to sell products globally, but few if any have made a serious commitment to globalization by providing good translations in multiple languages. (So far, machine translations are so lacking in accuracy and idiomatic expression that they are likely to inspire mirth rather than confidence in a Buyer.) Furthermore, no site offers products of a multitude of manufacturers along with customer support across more than one language, support that is needed for Buyers to be well informed about international shipping, duties, warranties, currency conversion, repair centers, and other issues important to Buyers.

Conventionally, for both e-commerce and brick-and-mortar businesses, separate databases are established to support production, marketing, sales, and accounting. Information changes in one business database often are not reflected in all of the other databases. Further information vital to a customer, such as parcel tracking, would require leaving the e-commerce site to access such a service on yet another system. Customer support is critically lacking in brick-and-mortar businesses and also is missing in most e-commerce businesses. What is missing is the ability to

place in the hands of the customer the ability to go to a single location and, interactively, to obtain an answer to a question pertaining to a product or to an order.

Departing from conventional e-commerce approaches, the ideal e-commerce model, from the manufacturers' viewpoint, is to sell globally using a system allowing

1) a single database of product descriptions in common format to be translated for Buyers across different languages,

2) Buyers to come to a single, authorized Global Store with a single Web URL address,

3) global sales across many locales using an information system operating in a multitude of languages to provide product information assembled for each specific locale,

4) a generalized, reliable approach to shipping, currency conversion, settlements, and customer support,

5) global sales without losing brand control,

6) minimal delays in bringing new products to market or old products to new markets,

7) the manufacturer to take orders for custom-made products, using a "pull" method,

8) fulfillment from a plurality of strategically-located fulfillment centers around the Globe, and

9) Buyers to get information on the Buyers' transaction history and to find links to manufacturer's support from a single Website.

*See* '736 Specification at col. 3, l. 18 - col. 4, l. 26.

61.     The '736 patent then states:

The Global Store system uses a multi-version database to provide a new way of providing language/locale-specific marketing information and sales of products to Buyers around the globe. Prior art, as seen in patents cited below, provide opportunities for Buyers to (a) view a product and be referred to a seller or (b)

view and purchase a product over the Internet, with or without use of a referrer Website. However, no prior art takes advantage of (a) multi-version, locale-specific innovations in marketing, (b) use of Referral Websites from a multitude of locales, combined with (c) other Ancillary Resources to offer truly global sales over the Internet.

*See* '736 Specification at col. 4, ll. 51-61.

62.     The '736 patent then states:

Prior art has not solved the problem of marketing globally from a single-point. Major players in global e-commerce (*e.g.*, AOL, Yahoo, and Amazon) have adopted a country-by-country or a region-by-region strategy in order to adapt to Buyers' languages and cultures.

In a statement quoted in a Wall Street Journal article, 8/01/2000, a Yahoo executive declared that Yahoo would consider itself unsuccessful if Yahoo were considered an American company two years from then. Yahoo and other e-commerce companies have discovered that their widely recognized brand names are, in themselves, not sufficient for attracting global e-commerce business. Buyers have been found, however, to be attracted to e-commerce sites that cater to local interests and culture. Stated another way, Buyers are more comfortable and confident about buying from a business they do not perceive as foreign.

Needed is a system to provide culture-sensitive and language-adapted marketing, sales, and customer service content to Buyers, doing so in a way that takes advantage of the efficiencies and economies of using a single point of operations. Prior art, described as follows, fails to meet that criterion:

*See* '736 Specification at col. 4, l. 63 – col. 5, l. 18.

63.     The '736 patent then states:

Also disclosed are other innovations not seen in the Wong patent, the Chelliah *et al* patent, or in other prior art:

(1) a clear and efficient way to categorize products to be displayed to Buyers,

(2) an order-taking shopping cart subsystem that encourages Buyers to complete a purchase transaction by keeping products selected for purchase in the Buyer's view and by interactively involving the Buyer in a purchasing process, and

> (3)  a means to provide comprehensive customer service information from a single convenient point.

Accommodating Buyers using a diversity of languages and additional needed innovations are discussed below in the context of related prior art.

*See* '736 Specification at col. 5, l. 53-67.

64.     The '736 patent then states:

By placing marketing information about products in the Global Store with its multi-language, single, logical, searchable database, a manufacturer can engage in marketing efforts worldwide on the Internet in a multitude of different languages and adapted to various cultures and countries. It has become obvious during the past several years that manufacturers around the world need a global marketing method in order to stay competitive and to optimize their profitability. Use of the Global Store will allow manufacturers advantageously to meet their long felt need to tap into the global market to expand their customer bases, increase sales, and benefit from economies of scale.

Furthermore, use of marketing resources in the Global Store meets the objective for manufacturers to access global marketing efforts without losing control over their marketing—place, presentation, price, promotions, and policies of service. Thereby, manufacturers may build a worldwide brand name based on authentic products, ethical representations, fair prices, and good service to Buyers.

*See* '736 Specification at col. 13, l. 3-22.

65.     The '736 patent then states:

Another object of this invention is to provide manufacturers with a much more efficient and responsive feedback mechanism for adjusting marketing and production schedules. For example, immediate feedback that a new line of skis was selling briskly in South America during May would prompt a ski manufacturer to start adding marketing and production resources for the new line's introduction to Buyers in North America in October.

Another object of the Global Store is to provide better controls over quality of products and services. A complete system of controls spans the Virtual Channel from start (adding a manufacturer's product into a global, multi-version product database) to end (the expiration of an escrow period during which a Buyer may request a refund if a delivered product is not satisfactory).

Another object of the Global Store is to help manufacturers satisfy Buyers' needs for customer service. In order to serve as an alternative to use of the Legacy Channel, the Global Store matches and, where possible, exceeds the level of service that Buyers find in the Legacy Channel.

*See* '736 Specification at col. 13, ll. 23-43.

66.     The '736 patent then states:

Another object of this invention is for manufacturers to be able to provide Buyers with adequate information to make buying decisions. Many prospective Buyers will not complete a transaction unless they know not only the cost of the item but also the total price, including shipping fees, *etc.* The present invention overcomes this barrier by providing a comprehensive, integrated system whereby Buyers from all over the world can get complete information about product, price (stated in the Buyer's currency), and delivery prior to making the buying decision. Furthermore, the use of a single marketing information database allows the manufacturer easily to control and communicate accurate information about product availability in inventory, service availability, warranties, and return policies.

Another object of this invention is to improve the probability a Buyer will complete a purchase transaction after the Buyer has selected a product for purchase. With conventional art, products are placed in a "shopping cart." Unfortunately, that cart often is later abandoned with no purchase made. The invention disclosed here includes an improved shopping cart design, an improvement that facilitates a Buyer's decision to complete a purchase transaction by

1)     establishing immediately an interactive relationship with the Buyer by opening a new frame that shows a shopping cart (titled "Open-Frame Interactive Shopping Cart") and asking the Buyer to answer certain questions that appear in the frame before the Buyer proceeds to checkout or returns to shopping,

2)     maintaining interactive contact by with the Buyer by keeping a minimized, restorable shopping cart visible on the Buyer's computer screen during the entire time when the Buyer is viewing products after a product has been selected,

3)     providing total costs for a purchase, including shipping charges, immediately after the Buyer has selected a product, and

4)      prominently offering the option for the Buyer of making an immediate purchase.

An important advantage here is the immediate assumption that the purchase will be made plus the visual reminder that the Buyer has made a selection and that the product is ready for purchase. This approach overcomes the disadvantage of prior art in which the Buyer is implicitly told that the Buyer need only "think about" completing the purchase "later." That implicit message is poor sales technique. It is best to have the Buyer complete the transaction as soon as possible, before the Buyer forgets about the perceived benefits of the product, gets distracted, or hesitates because of second thoughts.

*See* '736 Specification at col. 13, l. 57- col. 14, l. 37.

67.     The '736 patent then states:

The invention disclosed here includes an efficient universal method of organizing and displaying product categories for selection by Buyers. Using sequential drop-down menus and a clearly organized hierarchy, a Buyer quickly and intuitively navigates among thousands of possible categories of products to select a desired category. The process is easily understood, powerful, and efficient.

*See* '736 Specification at col. 14, ll. 44-50.

68.     The invention(s) claimed in the '736 patent solves various technological problems inherent in the then-existing electronic shopping systems to, among other things, (1) function more efficiently; (2) increase the pool of customers who interact with such systems; (3) overcome barriers to transaction carried out by such systems related to language, culture, and nationality; (4) establish new or improved integrations within such systems related to communications, databases, and hardware subsystems; (5) improve the methods by why such systems market and sell products; (6) help such systems to leverage economies of scale and become more competitive; (7) allow such systems to provide more timely and accurate information; (8) improve the comfort, confidence, and trust amongst customers and potential customers of such systems; (9)

streamline and better coordinate the operations of such systems with respect to customer support, marketing, sales, shipping, and accounting; (10) improve brand control within such systems; (11) expand the selection of products available for purchase through such systems; (12) improve the order-taking processes of such systems; (13) accommodate a broader range of customers and potential customers using such systems; (14) increase sales through the use of such systems; (15) improve the quality, organization, and presentation of information accessible to the customers and potential customers of such systems; (16) improve the probability that a customer or potential customer will complete a purchase transaction through such systems; and (17) reduce the complexity, costs, and other problems associated with such systems.

### United States Patent No. 8,175,519

69.     On May 8, 2012, the USPTO duly and legally issued United States Patent No. 8,175,519 ("the '519 patent") entitled "Third-Party Provider Method and System" to inventors Luis M. Ortiz and Kermit D. Lopez.

70.     The '519 patent is presumed valid under 35 U.S.C. § 282.

71.     Advanced Transactions owns all rights, title, and interest in the '519 patent.

72.     Advanced Transactions has not granted Belk an approval, an authorization, or a license to the rights under the '519 patent.

73.     The '519 patent relates to, among other things, novel marketing and commercial transaction systems.

74.     The specification of the '519 patent is the same as the '057 patent specification, and addresses and solves the problems recited above and described in the '057 patent specification.

## United States Patent No. 9,747,608

75.     On August 29 2017, the USPTO duly and legally issued United States Patent No. 9,747,608 ("the '608 patent") entitled "Third-Party Provider Method and System" to inventors Luis M. Ortiz and Kermit D. Lopez.

76.     The '608 patent is presumed valid under 35 U.S.C. § 282.

77.     Advanced Transactions owns all rights, title, and interest in the '608 patent.

78.     Advanced Transactions has not granted Belk an approval, an authorization, or a license to the rights under the '608 patent.

79.     The '608 patent relates to, among other things, novel marketing and commercial transaction systems.

80.     The specification of the '608 patent is the same as the '057 patent specification, and addresses and solves the problems recited above and described in the '057 patent specification.

## United States Patent No. 10,783,529

81.     On September 22, 2020, the USPTO duly and legally issued United States Patent No. 10,783,529 ("the '529 patent") entitled "Third-Party Provider Method and System" to inventors Luis M. Ortiz and Kermit D. Lopez.

82.     The '529 patent is presumed valid under 35 U.S.C. § 282.

83.     Advanced Transactions owns all rights, title, and interest in the '529 patent.

84.     Advanced Transactions has not granted Belk an approval, an authorization, or a license to the rights under the '529 patent.

85.     The '529 patent relates to, among other things, novel marketing and commercial transaction systems.

86.     The specification of the '529 patent is the same as the '057 patent specification, and addresses and solves the problems recited above and described in the '057 patent specification.

## CLAIMS FOR RELIEF

### Count I – Infringement of United States Patent No. 7,065,555

87.     Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

88.     On information and belief, Belk (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the Belk Marketing Products, and Services; and makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Belk Marketing System in the United States that infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the '555 patent.

89.     On information and belief, one or more components of the Belk Marketing System, (*e.g.*, an email server operated by Belk), employs and provides a method for conducting an email campaign.

26



*See e.g.,* https://www.belk.com/account-edit-profile/.



*See e.g.,* screenshot of email received from Belk's email server, accessible at

https://www.belk.com/customer-service/stay-

connected/?source=transactional&cm_mmc=EMLTRX-CAM_vR1-

Opt+In+Banner&emailid=dGVkZHZhbmJAbWFjLmNvbQ==&et_cid=80484379&et_rid

=1445690605&linkid=Opt+In+Banner.

  90. On information and belief, one or more components of the Belk Marketing

System employs and provides a method for conducting an email campaign, comprising

the step of receiving an email target database.



*See e.g.,* https://www.belk.com/account-edit-profile/.



*See e.g.,* redacted screenshot of email received from Belk's email server.

91.     On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of generating an email campaign template related to at least one email target in the received email target database.



*See e.g.,* redacted screenshot of email received from Belk's email server.

92.     On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of generating an email campaign template related to at least one email target in the received email target database, wherein the step of generating an email campaign template related to at least one email target in the received email target database comprises the step of generating a message template.



*See e.g.,* redacted screenshot of email received from Belk's email server.

93.     On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of generating an email campaign template related to at least one email target in the received email target database, wherein the step of generating an email campaign template related to at least one email target in the received email target database

comprises the step of generating a configuration file to contain data related to each of the at least one email target, (e.g., images and text referencing the intended recipient of the email) wherein the data is insertable in the generated message template.



*See e.g.,* redacted screenshot of email received from Belk's email server.

94.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of sending to each of the at least one email target a corresponding custom email, (e.g., the email reproduced below) wherein the custom email is formed from the email campaign template.



*See e.g.,* redacted screenshot of email received from Belk's email server.

95.     On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of tracking the custom email (e.g., through the code reproduced below) sent to each of the at least one email target.



*See e.g.,* redacted screenshot of email received from Belk's email server. *See also* redacted code excerpt from the same email:

```
<img src="http://click.belkemail.com/open.aspx?ffcb10-fe541c70716c007e721d-fdcc1574736600 7e/412737666-fe6b15707c63067d7414-
fe521779736402747013-fdf71574716102747512707 0-febc1d7875650d75&d=10154&bmt=0" width="1" height="1" alt="">
```

96.     On information and belief, Belk directly infringes at least claim 1 of the '555 patent, and is in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Belk Marketing Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Belk Marketing System.

97.      Belk's direct infringement has damaged Advanced Transactions and caused it to suffer and continue to suffer irreparable harm and damages.

**Count II – Infringement of United States Patent No. 7,386,594**

98.     Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

99.     On information and belief, Belk (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the Belk Marketing Products, and Services; and makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Belk Marketing System in the United States that infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the '594 patent.

100.    On information and belief, one or more components of the Belk Marketing System, (*e.g.,* Belk's email servers), employs and provides a method for conducting an email campaign.



*See e.g.,* https://www.belk.com/account-edit-profile/.



*See e.g.,* screenshot of email received from Belk's email server, accessible at

https://www.belk.com/customer-service/stay-

connected/?source=transactional&cm_mmc=EMLTRX-CAM_vR1-

Opt+In+Banner&emailid=dGVkZHZhbmJAbWFjLmNvbQ==&et_cid=80484379&et_rid

=1445690605&linkid=Opt+In+Banner.



*See e.g.,* redacted screenshot of email received from Belk's email server.

101.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of receiving an email target database.



*See e.g.,* https://www.belk.com/account-edit-profile/.

102.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of generating an email campaign template (*e.g.,* the template used to generate the email reproduced below) related to at least one email target in the received email target database.



*See e.g.,* redacted screenshot of email received from Belk's email server.

103.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of generating an email campaign template related to at least one email target (*e.g.,* the intended recipient of the email reproduced below) in the received email target database, wherein the step of generating an email campaign template related to at least one email target in the received email target database comprises the step of generating a message template.



*See e.g.,* redacted screenshot of email received from Belk's email server.

104.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of generating an email campaign template related to at least one email target in the received email target database, wherein the step of generating an email campaign template related to at least one email target in the received email target database comprises the step of generating a configuration file to contain data related to each of the at least one email target, wherein the data is insertable in the generated message template.



*See e.g.,* redacted screenshot of email received from Belk's email server.

105.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for conducting an email campaign, comprising the step of sending to each of the at least one email target a corresponding custom email, wherein the custom email is formed from the email campaign template.



*See e.g.,* redacted screenshot of email received from Belk's email server.

106.    On information and belief, Belk directly infringes at least claim 1 of the '594 patent, and is in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Belk Marketing Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Belk Marketing System.

107.    Belk's direct infringement has damaged Advanced Transactions and caused it to suffer and continue to suffer irreparable harm and damages.

### Count III – Infringement of United States Patent No. 7,693,950

108.    Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

109.    On information and belief, Belk (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the Belk Marketing Products, and Services; and makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Belk Marketing System in the United States that infringe (literally and/or under the doctrine of equivalents) at least claim 13 of the '950 patent.

110.    On information and belief, one or more components of the Belk Marketing System, (e.g. a Belk email server) comprise a system for conducting an email campaign.



*See e.g.,* https://www.belk.com/account-edit-profile/.



*See e.g.,* screenshot of email received from Belk's email server, accessible at

https://www.belk.com/customer-service/stay-

connected/?source=transactional&cm_mmc=EMLTRX-CAM_vR1-

Opt+In+Banner&emailid=dGVkZHZhbmJAbWFjLmNvbQ==&et_cid=80484379&et_rid

=1445690605&linkid=Opt+In+Banner.



*See e.g.,* redacted screenshot of email received from Belk's email server.

111.    On information and belief, one or more components of the Belk Marketing System comprise a system for conducting an email campaign, comprising a means for receiving information from an email target database.



*See e.g.,* https://www.belk.com/account-edit-profile/.

41

112.    On information and belief, one or more components of the Belk Marketing System comprise a system for conducting an email campaign, comprising a means for generating a message template, (*e.g.*, the template used to generate the email reproduced below) of an email campaign template.



*See e.g.*, redacted screenshot of email received from Belk's email server.

113.    On information and belief, one or more components of the Belk Marketing System comprise a system for conducting an email campaign, comprising a means for generating a configuration file of the email campaign template to contain data related to each of at least one email target, (*e.g.*, text and images associated with the intended recipient of the email below) wherein the data is insertable in the message template.



*See e.g.,* redacted screenshot of email received from Belk's email server.

114.    On information and belief, one or more components of the Belk Marketing System comprise a system for conducting an email campaign, comprising a means for sending to each of the at least one email target a corresponding custom email, wherein the custom email, (*e.g.,* the custom email reproduced below) is formed from the email campaign template.



*See e.g.,* redacted screenshot of email received from Belk's email server.

115.    On information and belief, Belk directly infringes at least claim 13 of the '950 patent, and is in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Belk Marketing Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Belk Marketing System.

116.    Belk's direct infringement has damaged Advanced Transactions and caused it to suffer and continue to suffer irreparable harm and damages.

### Count IV – Infringement of United States Patent No. 7,979,057

117.    Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

118.    On information and belief, Belk (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the Belk Marketing Products, and Services; and

makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Belk Marketing System in the United States that infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the '057 patent.

119.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for processing negotiable economic credits, (*e.g.,* gift cards, Belk credit card rewards, *etc.*) through a wireless hand held device, (*e.g.,* a smart phone with the Belk App installed).



*See e.g.,* https://www.belk.com.



*See e.g.,* https://apps.apple.com/us/app/belk/id673347869



*See, e.g.,* https://www.belk.com/belk-credit-card-rewards-benefits.html



*See e.g.,* Screenshots from the Belk iOS App.

120.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for processing negotiable economic credits through a wireless hand held device, comprising the step of storing a filter in a memory of a hand held device, wherein the hand held device comprises a display, user controls, the memory, and a wireless controller, wherein the wireless controller is configured to communicate with a wireless network, (*e.g.,* a cellular data network, Belk in-store WIFI network, etc.) and wherein the filter is configurable via the user controls.

# May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.,* screenshots from the Belk iOS App.

  121. On information and belief, one or more components of the Belk Marketing System employs and provides a method for processing negotiable economic credits

through a wireless hand held device, comprising the step of receiving at least one negotiable economic credit from the wireless network at the hand held device based on the stored filter.

## May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.*, screenshots from the Belk iOS App.

122.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for processing negotiable economic credits through a wireless hand held device, comprising the step of storing the at least one negotiable economic credit in the memory of the hand held device.

## May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.,* screenshots from the Belk iOS App.

123.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for processing negotiable economic credits through a wireless hand held device, comprising the step of retrieving the at least one negotiable economic credit.



‹                                        FAQs

# Methods of Payment

## Belk accepts the following forms of payment through the Belk App:

- Belk Rewards credit card
- Visa
- PayPal
- MasterCard
- American Express
- Discover
- Debit cards with a Visa/MasterCard/Amex/Discover logo
- Belk gift cards
- Apple Pay
- Pre-paid gift cards, such as Simon's, as long as the sale is less than or equal to the value/balance of the card

*See e.g., See e.g.,* screenshot from the Belk iOS App.

124.    On information and belief, one or more components of the Belk Marketing System employs and provides a method for processing negotiable economic credits

through a wireless hand held device, comprising the step of transferring the at least one

negotiable economic credit via the wireless network.



**FAQs**

# Methods of Payment

## Belk accepts the following forms of payment through the Belk App:

- Belk Rewards credit card
- Visa
- PayPal
- MasterCard
- American Express
- Discover
- Debit cards with a Visa/MasterCard/Amex/Discover logo
- Belk gift cards
- Apple Pay
- Pre-paid gift cards, such as Simon's, as long as the sale is less than or equal to the value/balance of the card

*See e.g.,* screenshot from the Belk iOS App.

125.    On information and belief, Belk directly infringes at least claim 1 of the

'057 patent, and is in violation of 35 U.S.C. § 271(a) by making, using, selling, importing,

and/or offering to sell the Belk Marketing Products and Services; and making, using,

selling, selling access to, importing, offering for sale, and/or offering to sell access to the

Belk Marketing System.

126.    Belk's direct infringement has damaged Advanced Transactions and caused it to suffer and continue to suffer irreparable harm and damages.

**Count V – Infringement of United States Patent No. 8,150,736**

127.    Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

128.    On information and belief, Belk (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the Belk Marketing Products, and Services; and makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Belk Marketing System in the United States that infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the '736 patent.

129.    On information and belief, one or more components of the Belk Marketing System employs and provides a method in a computing system having a processor, (*e.g.*, a Belk webserver) comprising the step of receiving a request for a web page, the request including a locale identifier value, the locale identifier value referencing a geographic location associated with a referral website and a language associated with a webpage of the referral website containing a link used to generate the request.



*See e.g.,* https://www.belk.com/stores/.

130.   On information and belief, one or more components of the Belk Marketing System employs and provides a method in a computing system having a processor, (*e.g.*, a Belk webserver) comprising the step of with the processor, retrieving a version of marketing information identified by processing the locale identifier value included in the request for the web page.



*See e.g.,* https://www.belk.com/stores/.

131.   On information and belief, one or more components of the Belk Marketing System employs and provides a method in a computing system having a processor, (e.g., a Belk webserver) comprising the step of with the processor, generating the requested web page to include information representative of the retrieved version of the marketing information.





*See e.g.,* https://www.belk.com/customer-service/pickup-delivery-options/ and

https://www.belk.com/customer-service/pickup-delivery-options/#sameday

132.     On information and belief, one or more components of the Belk Marketing

System employs and provides a method in a computing system having a processor,

(*e.g.*, a Belk webserver) comprising the step of transmitting the generated web page.



*See e.g.,* https://www.belk.com/customer-service/pickup-delivery-options/ and

https://www.belk.com/customer-service/pickup-delivery-options/#sameday

133.     On information and belief, Belk directly infringes at least claim 1 of the '736 patent, and is in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Belk Marketing Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Belk Marketing System.

134.     Belk's direct infringement has damaged Advanced Transactions and caused it to suffer and continue to suffer irreparable harm and damages.

### Count VI – Infringement of United States Patent No. 8,175,519

135.     Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

136.     On information and belief, Belk (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the Belk Marketing Products, and Services; and makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Belk Marketing System in the United States that infringe (literally and/or under the doctrine of equivalents) at least claim 22 of the '519 patent.

137.     On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of requesting at least one negotiable economic credit (*e.g.*, gift cards, Belk credit card rewards, etc.) using a hand held device.



*See e.g.,* https://www.belk.com.



*See e.g.,* https://apps.apple.com/us/app/belk/id673347869



*See, e.g.,* https://www.belk.com/belk-credit-card-rewards-benefits.html



*See e.g.*, Screenshots from the Belk iOS App.

138.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of receiving the at least one negotiable economic credit at the hand held device.

## May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.





*See e.g.,* screenshots from the Belk iOS App.

139.    On information and belief, one or more components of the Belk Marketing

System employs and provides a method comprising the step of storing the at least one

negotiable economic credit in a memory of the hand held device.

## May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.





*See e.g.,* screenshots from the Belk iOS App.

140.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of retrieving the at least one negotiable economic credit from the memory of the hand held device.



## Methods of Payment

### Belk accepts the following forms of payment through the Belk App:

- Belk Rewards credit card
- Visa
- PayPal
- MasterCard
- American Express
- Discover
- Debit cards with a Visa/MasterCard/Amex/Discover logo
- Belk gift cards
- Apple Pay
- Pre-paid gift cards, such as Simon's, as long as the sale is less than or equal to the value/balance of the card

*See e.g., See e.g.,* screenshot from the Belk iOS App.

141.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of sending the at least one negotiable economic credit using the hand held device.



## Methods of Payment

**Belk accepts the following forms of payment through the Belk App:**

- Belk Rewards credit card
- Visa
- PayPal
- MasterCard
- American Express
- Discover
- Debit cards with a Visa/MasterCard/Amex/Discover logo
- Belk gift cards
- Apple Pay
- Pre-paid gift cards, such as Simon's, as long as the sale is less than or equal to the value/balance of the card

*See e.g., See e.g.,* screenshot from the Belk iOS App.

142.   On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of after sending the at least one negotiable economic credit, receiving, at the hand held device, a message indicating a negotiable economic credit was utilized.



*See e.g.,* https://www.belk.com/customer-service/egift-card/.

143.   On information and belief, Belk directly infringes at least claim 22 of the '519 patent, and is in violation of 35 U.S.C. § 271(a) by making, using, selling, importing,

and/or offering to sell the Belk Marketing Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Belk Marketing System.

144.    Belk's direct infringement has damaged Advanced Transactions and caused it to suffer and continue to suffer irreparable harm and damages.

### Count VII – Infringement of United States Patent No. 9,747,608

145.    Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

146.    On information and belief, Belk (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the Belk Marketing Products, and Services; and makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Belk Marketing System in the United States that infringe (literally and/or under the doctrine of equivalents) at least claim 10 of the '608 patent.

147.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of an electronic, portable device, (*e.g.*, a smartphone with the Belk App installed) transmitting via a network connection, (*e.g.*, a cellular network connection, a Belk in-store WIFI connection, etc.) to a computer system, (e.g., a Belk server) a request for issuing a data structure corresponding to an account associated with the electronic, portable device.

# May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.,* screenshots from the Belk iOS App.

148.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of in response to the request, receiving, by the electronic, portable device, via the network connection, the data structure, wherein the data structure encodes information indicative of a particular item of negotiable economic credit (*e.g.,* a gift card, a reward associated with a Belk credit card, etc.) and further includes authentication information usable to authenticate the particular item of negotiable economic credit.

## May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.,* screenshots from the Belk iOS App.

149.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of detecting, by the electronic, portable device, that a transaction has been initiated by a user for the electronic, portable device.



‹                        FAQs

## Methods of Payment

**Belk accepts the following forms of payment through the Belk App:**

- Belk Rewards credit card
- Visa
- PayPal
- MasterCard
- American Express
- Discover
- Debit cards with a Visa/MasterCard/Amex/Discover logo
- Belk gift cards
- Apple Pay
- Pre-paid gift cards, such as Simon's, as long as the sale is less than or equal to the value/balance of the card

*See e.g.,* screenshot from the Belk iOS App.

## May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.*, screenshots from the Belk iOS App.

150.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of in response to the detecting, the electronic, portable device transmitting, via the network connection, the information indicative of the particular item of negotiable economic credit and the authentication information to a point-of-sale (POS) device, (*e.g.*, a point-of-sale device located in a Belk retail store location) and instructing the POS device to apply the particular item of negotiable economic credit to the transaction, wherein the POS device is one of a plurality of POS devices located in different establishments.

 FAQs

## Methods of Payment

**Belk accepts the following forms of payment through the Belk App:**

- Belk Rewards credit card
- Visa
- PayPal
- MasterCard
- American Express
- Discover
- Debit cards with a Visa/MasterCard/Amex/Discover logo
- Belk gift cards
- Apple Pay
- Pre-paid gift cards, such as Simon's, as long as the sale is less than or equal to the value/balance of the card

# May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.,* screenshots from the Belk iOS App.

151.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of receiving, by the electronic, portable device, authentication information indicating that the particular item of negotiable economic credit has been authenticated by the POS device and applied to the transaction.

152.    On information and belief, Belk directly infringes at least claim 10 of the '608 patent, and is in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Belk Marketing Products and Services; and making, using,

selling, selling access to, importing, offering for sale, and/or offering to sell access to the Belk Marketing System.

153.    Belk's direct infringement has damaged Advanced Transactions and caused it to suffer and continue to suffer irreparable harm and damages.

### Count VIII – Infringement of United States Patent No. 10,783,529

154.    Advanced Transactions repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

155.    On information and belief, Belk (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the Belk Marketing Products, and Services; and makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Belk Marketing System in the United States that infringe (literally and/or under the doctrine of equivalents) at least claim 8 of the '529 patent.

156.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of storing, by an electronic, portable device, (*e.g.*, a smartphone with the Belk app installed) a data structure, wherein the data structure encodes information indicative of a particular item of negotiable economic credit, (*e.g.*, a gift card, a reward associated with a Belk credit card, etc.) and further includes authentication information usable to authenticate the particular item of negotiable economic credit.

# May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.,* screenshots from the Belk iOS App.

157.     On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of detecting, by the electronic, portable device, that a transaction has been initiated by a user of the electronic, portable device.



*See e.g.,* screenshots from the Belk iOS App.

158.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of in response to the detecting, the electronic, portable device transmitting the information indicative of the particular item of negotiable economic credit and the authentication information to a point-of-sale (POS) device, and instructing the POS device to apply the particular item of negotiable economic credit to the transaction such that a discount associated with the transaction is received by the user of the electronic, portable device.

## May I purchase and/or redeem gift cards through the Belk App?

Belk.com offers a variety of gift cards that may be purchased and redeemed at any time through the Belk App, on belk.com and at any Belk store.



*See e.g.,* screenshots from the Belk iOS App.

159.    On information and belief, one or more components of the Belk Marketing System employs and provides a method comprising the step of receiving, by the electronic, portable device, a message indicating that the particular item of negotiable economic credit has been authenticated by the POS device and applied to the transaction.

160.    On information and belief, Belk directly infringes at least claim 8 of the '529 patent, and is in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Belk Marketing Products and Services; and making, using,

selling, selling access to, importing, offering for sale, and/or offering to sell access to the Belk Marketing System.

161.    Belk's direct infringement has damaged Advanced Transactions and caused it to suffer and continue to suffer irreparable harm and damages.

## JURY DEMANDED

162.    Pursuant to Federal Rule of Civil Procedure 38(b), Advanced Transactions hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Advanced Transactions respectfully requests this Court to enter judgment in Advanced Transaction's favor and against Belk as follows:

a.  finding that Belk has infringed one or more claims of the '555 patent under 35 U.S.C. §§ 271(a);

b.  finding that Belk has infringed one or more claims of the '594 patent under 35 U.S.C. §§ 271(a);

c.  finding that Belk has infringed one or more claims of the '950 patent under 35 U.S.C. §§ 271(a);

d.  finding that Belk has infringed one or more claims of the '057 patent under 35 U.S.C. §§ 271(a);

e.  finding that Belk has infringed one or more claims of the '736 patent under 35 U.S.C. §§ 271(a);

f.  finding that Belk has infringed one or more claims of the '519 patent under 35 U.S.C. §§ 271(a);

g.  finding that Belk has infringed one or more claims of the '608 patent under 35 U.S.C. §§ 271(a);

h.  finding that Belk has infringed one or more claims of the '529 patent under 35 U.S.C. §§ 271(a);

i.  awarding Advanced Transactions damages under 35 U.S.C. § 284, or otherwise permitted by law, including supplemental damages for any continued post-verdict infringement;

j.  awarding Advanced Transactions pre-judgment and post-judgment interest on the damages award and costs;

k.  awarding cost of this action (including all disbursements) and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

l.  awarding such other costs and further relief that the Court determines to be just and equitable.

Dated: February 18, 2022

Respectfully submitted,
*/s/Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
**THE MORT LAW FIRM, PLLC**
100 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel/Fax: 512-865-7950

*Of Counsel:*
Ronald M. Daignault (*pro hac vice* to be filed)*
Chandran B. Iyer (*pro hac vice* to be filed)
Oded Burger (*pro hac vice* to be filed)*
Zachary H. Ellis (Texas Bar No. 24122606)*

Tedd W. Van Buskirk (*pro hac vice* to be filed)*
rdaignault@daignaultiyer.com
cbiyer@daignaultiyer.com
oburger@daignaultiyer.com
zellis@daignaultiyer.com
tvanbuskirk@daignaultiyer.com
**DAIGNAULT IYER LLP**
8618 Westwood Center Drive - Suite 150
Vienna, VA 22182

*Attorneys for Plaintiff Advanced Transactions, LLC.*

*Not admitted to practice in Virginia